**FILED**

MAR 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALGIENON TANNER**
**Fed. Reg No. 05818-040**
**USP Leavenworth**
**U.S. Penitentiary**
**P.O. Box 1000**
**Leavenworth, KS  66048-1000,**

     **Plaintiff,**

     **v.**

**FEDERAL BUREAU OF PRISONS,**
**320 First Street, N.W.,**
**Washington D.C.  20534,**

**and**

**HARLEY G. LAPPIN,**
**Director, Federal Bureau of Prisons,**
**320 First Street, N.W.,**
**Washington D.C.  20534,**
**sued in his official capacity,**

     **Defendants.**

CASE NUMBER  1:06CV00529

JUDGE: Ricardo M. Urbina

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 03/21/2006

## MOTION FOR A TEMPORARY RESTRAINING ORDER

COMES NOW plaintiff Algienon Tanner, by and through counsel, and

respectfully moves this Court to issue a temporary restraining order pursuant to Rule

65(b) of the Federal Rules of Civil Procedure against defendant Bureau of Prisons,

defendant Lappin, and the BOP employees.  As grounds therefore, plaintiff incorporates

by reference his Memorandum in Support of a Temporary Restraining Order and the

Declaration of Paul Kurtz of March 17, 2006.

2

WHEREFORE, plaintiff requests that a temporary restraining order be entered
requiring the Bureau of Prisons to reverse plaintiff's transfer to USP Leavenworth, and
requiring that he be transferred back to FCI Fairton, New Jersey..  Plaintiff requests that
bond be waived or set in a de minimus amount.

Respectfully submitted,

Brian W. Shaughnessy, DC 89946
913 M Street, N.W.
Suite 101
Washington, D.C. 20001
(202) 842-1700

Attorney for Plaintiff
Algienon Tanner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**ALGIENON TANNER**
**Fed.Reg.No. 05818-040**
**USP Leavenworth**
**U.S. Penitentiary**
**PO Box 1000**
**Leavenworth, KS 66048-1000**

   **Plaintiff,**

    **v.**

**FEDERAL BUREAU OF PRISONS,**
**320 First Street, N.W.,**
**Washington D.C. 20534,**

**and**

**HARLEY G. LAPPIN,**
**Director, Federal Bureau of Prisons,**
**320 First Street, N.W.,**
**Washington D.C. 20534,**
**sued in his official capacity,**

   **Defendants.**

06 0529

Case No. _____

## MEMORANDUM IN SUPPORT OF MOTION
## FOR A TEMPORARY RESTRAINING ORDER

   Algienon Tanner, by and through counsel, submits this Memorandum in support of his Motion for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65, requiring the defendants to rescind the order transferring plaintiff from FCI Fairton, New Jersey to USP Leavenworth, Kansas and transfer him back to FCI Fairton. Plaintiff relies on this Memorandum in Support of Motion for a Temporary Restraining Order and his Declaration filed herewith and states the following:

## FACTUAL BACKGROUND

Plaintiff Tanner is a fifty-five year old male, who has been in the custody of the Federal Bureau of Prisons (hereinafter "BOP") at FCI Fairton, NJ since January 4, 2001. He has been incarcerated for approximately 246 months and is scheduled for release on September 29, 2008.

Before his incarceration, Mr. Tanner was an uneducated, frequently unemployed, person who was unable to function successfully in our society. During the early part of his incarceration he was engaged in institutional adjustment, but as time progressed he began to evaluate himself and his prospects for life after he was released. Fortunately, he received thoughtful counseling - consistent with the rehabilitative component of the BOP's Mission Statement requiring the provision of "work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens" - while incarcerated at FCI Fairton.

At a Unit Team meeting, the BOP staff recommended he enroll in vocational training programs; more particularly, given his interests, they recommended a BOP cable building apprenticeship program that required 2000 hours to complete. Mr. Tanner, recognizing the merit of self-improvement through education, enrolled in two specialized programs that afforded him a likelihood of meaningful employment upon his release - Aquaculture Science and the Cable Technician program.

Primarily through the enthusiasm and efforts of Mr. Jablonski, the instructor for the Aquaculture Science program at FCI Fairton, Mr. Tanner developed a keen interest in the subject. An aquaculture program of the intensity offered at FCI Fairton is required for

State licensing in New Jersey. Mr. Tanner has been enrolled in that two year program for eight months and was progressing well before his transfer.

Pursuant to his Unit Team's recommendation, Mr. Tanner also applied for the cable program available at FCI Fairton, and undertook to become qualified. However, notwithstanding the staff's recommendation, Mr. Tanner still had to satisfy a particular requirement for participation in the cable program; the attainment of a Grade 1 pay scale rating, the highest grade at UNICOR (Federal Prison Industries, Inc.). Plaintiff toiled at UNICOR for two years to progress through the pay scale grades at FCI Fairton; from Grade 4, the lowest rating, which paid $0.46 per hour to Grade 1, which paid $1.15 per hour.

One immediate benefit of the achieving the higher pay grade was that it enabled Mr. Tanner to meet the BOP staff's instruction for him to send $150 per month to his savings account. The second benefit was that it put him on the path to qualifying for the cable apprenticeship program.

Although it took two years for Mr. Tanner to move through the pay scale ratings, because of BOP-UNICOR policies an inmate must begin all over again from Grade 4 when he is transferred to another institution. Accordingly, the permanent transfer of plaintiff to USP Leavenworth will strip him of the Grade 1 pay scale he attained at FCI Fairton, resulting in lower pay and substantially longer wait to qualify for the cable program, were it available at USP Leavenworth.

Mr. Tanner had a deep interest in both the aquaculture Science program and the cable apprenticeship programs he attended at FCI Fairton. But, those programs are NOT available at USP Leavenworth.

3

Plaintiff has spent over twenty years in the Federal prison system and is now about two and one half years from his release date.    He has been counseled by the Fairton staff to obtain training and save money to insure that he can fend for himself until he gets established in society with employment, living quarters, food and other things necessary to make a success of life.   He has complied with all instructions given him by the FCI Fairton staff and availed himself of all good advice and counseling given him. He has been doing well in all areas, including his UNICOR job - 18 months cable building experience is a requirement of the cable apprenticeship program - saving money, participating in the two vocational programs, and generally educating himself for his return to society after his long absence.

Plaintiff's hopes for a well-prepared reentry into normal society were dealt a major setback from which he will likely not recover because of the abrupt and arbitrary termination of his training programs, his drastic reduction in UNICOR pay grade and his removal from FCI Fairton – a facility where he has made such remarkable progress.

The training programs that are no longer available to him were ideal for Mr. Tanner, who is no longer able to perform the strenuous manual labor available to younger men.    Because of the relatively short time left on his sentence and the lengthy qualification process for Grade 1 in UNICOR and training programs - cable and aquaculture are not available at USP Leavenworth - there is insufficient time for plaintiff to begin programs of similar intensity and value at another institution.[1]   Because the BOP has transferred him from FCI Fairton, he has lost his excellent prospects to leave the

---

[1] As a practical matter, since Mr. Tanner has only 30± months remaining to serve - the last six months of which are projected to be in a Midtigan Correctional Counseling Center (halfway house) - unless he is immediately returned to FCI Fairton and re-enrolled in the Aquaculture and Cable programs he will lose any possibility of program completion prior to his scheduled release date.

4

Federal prison system vocationally rehabilitated with a good chance to re-integrate himself into society upon his fast approaching release.

Plaintiff was informed of his transfer on Thursday, February 9, 2006, by the Unit Staff at FCI Fairton, who told him to pack his belongings for an immediate transfer to another institution. Although he objected to the transfer to Associate Warden Chuck Maiorana, the Warden at FCI Fairton refused to reverse the transfer.

Plaintiff's family requested the assistance of Federal Inmate Advocates, who contacted FCI Fairton on February 10, 2006. Mr. Paul Kurtz, Executive Director of Federal Inmate Advocates, spoke with the Warden's office and confirmed that Mr. Tanner was to be transferred to USP Leavenworth in the North Central Region.

On February 13, 2006, Mr. Kurtz called the Regional Director, North East Regional Office ("NERO"), BOP in Philadelphia to request reversal of Mr. Tanner's transfer and was told by Mr. Tom Washburn, Chief of Correctional Programs, NERO, that he was specifically rejecting the request to reverse the transfer and keep Mr. Tanner at FCI Fairton. Mr. Washburn also explained that this was a "routine transfer" and that Mr. Tanner could request transfer back to FCI Fairton by availing himself of the Inmate Administrative Remedy process. *See, Affidavit of Paul C. Kurtz, 3/17/2006* (Exhibit 1).

Mr. Kurtz then sent a letter to the BOP Regional Director, with a copy to the BOP Assistant Director for Correctional Programs at the Central Office in Washington, DC, relating his conversation with Mr. Washburn and requesting that the Regional Director exercise his authority and reverse the transfer. *Letter of Federal Inmate Advocates, 3/13/2006* (Exhibit 2).

On March 16, 2006 Mr. Kurtz received a response - a letter dated March 7, 2006 but postmarked March 14, 2006 - from Warden Schultz of FCI Fairton. In that letter, Warden Schultz explained that Mr. Tanner's transfer "was not punitive or disciplinary in nature and was just one of many transfers approved in an effort to manage the population at these facilities [USP Leavenworth and FCI Fairton]." Moreover, Warden Schultz stated that "eligible candidates [for transfer] were medium security inmates, with release dates in excess of a year and *preferential consideration was given to those inmates with release residences closer to USP Leavenworth.*" (Emphasis supplied.). Warden Schultz concluded by affirming that "the request to reverse inmate Tanner's transfer has been denied." *Letter of Warden Paul M. Schultz,* 3/7/2006 (Exhibit 3).

Mr. Tanner's "routine transfer" placed him at Leavenworth on February 15, 2006 bereft of the program participation essential to his vocational rehabilitation.

## **LEGAL STANDARD**

It is well established that to obtain a temporary restraining order or preliminary injunction, the plaintiff must demonstrate (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the requested relief is not granted, (3) that an order or injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the temporary restraining order or injunction. *Cobell v. Norton,* 391 F.3d 251, 258 (D.C. Cir. 2004); *Katz v. Georgetown University,* 246 F.3d 685, 687-88 (D.C. Cir. 2001); *City Fed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C. Cir. 1995); *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C. Cir. 1989); and *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060 (D.C.Cir.1998).

6

890 F.2d 1205, 1208 (D.C. Cir. 1989); and *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C.Cir.1998).

The trial court is to balance those factors, not necessarily giving equal weight to each. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Office of Thrift Supervision* at 746; *Cuomo v. United States Nuclear Regulatory Comm'n.*, 772 F.2d 972, 974 (D.C. Cir. 1985). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. Although the grant of interim relief is an extraordinary remedy, it should be granted in the limited circumstances which clearly demand it." *See, United States v. Jefferson Co.*, 720 F.2d 1511, 1519 (11th Cir. 1983).

## ARGUMENT

### I.    The Balance of Hardships Favors the Plaintiff.

"Although the decision to grant or deny interlocutory injunctive relief depends upon a flexible interplay among all the factors considered, it is clear that the two more important factors are those of probable irreparable injury to the plaintiff without a decree and of likely harm to the defendant with a decree." *Maryland Undercoating Co., Inc. v. Payne*, 603 F.2d 477, 481 n.9 (4th Cir. 1979). And in any suit for injunctive relief the balance of hardships may be tipped by the strength of the plaintiff's showing of a likelihood of success on the merits. *Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977); *accord, Federal Trade Commission, v. Weyerhaeuser Company, Et Al,* No. 81-1346 (D.C. Cir. 09/01/81) (Mikva, C.J., dissenting). In this case, the balance of hardship favors the plaintiff.

7

A.    **The Plaintiff Will Suffer Irreparable Harm if the Transfer to USP Leavenworth is Not Reversed.**

The United States Supreme Court has held on more than one occasion that a violation of constitutional rights constitutes irreparable injury warranting interim injunctive relief. *See, Elrod v. Burns*, 437 U.S. 347 (1976); *Doran v. Salem Inn, Inc.*, 422 U.S.922 (1975). In *Elrod,* the Court held that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod* at 373. In approving injunctive relief, the Court stated that since constitutional injury was either threatened or in fact being impaired at the time relief was sought, a preliminary injunction was appropriately granted to protect the plaintiffs from irreparable injury. *Id.* at 374; *see, also, Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 520-21 (4th Cir. 2002) (upholding preliminary injunction in First Amendment challenge to statute and regulation prohibiting certain lewd entertainment).

Although this case does not raise First Amendment questions which were the issue in *Elrod* and *Doran,* the rights at issue in this case are also rights which must be carefully guarded against infringement. *See Elrod,* 427 U.S. at 373. Thus, it seems clear that a finding of irreparable injury should be made here, as well. *See Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417 (11th Cir. 1984) (housing discrimination constitutes irreparable injury); *Clemons v. Board of Education of Hillsboro, Ohio,* 228 F.2d 853 (6th Cir. 1956) (segregation constitutes irreparable injury); *Pathways Psychosocial v. Town of Leonardtown, MD,* 223 F. Supp. 2d 699 (D. MD 2002) (discrimination on the basis of disability is presumed to be irreparable injury); *Able v. United States of America,* 847 F. Supp. 1038 (E.D.N.Y. 1994) (discrimination on the basis of sexual orientation constitutes irreparable injury).

8

The rationale behind treating constitutional injuries as irreparable is that no other form of redress appears available if the preliminary injunction is denied, and, later on the merits, a constitutional violation is found to have occurred. *Rum Creek Coal Sales v. Caperton,* 926 F.2d 353, 361 (4th Cir. 1991). This is particularly true in cases, as here, in which the constitutional violation might likely become permanent . . . due to the extended time necessary to complete the litigation. *Compare, Faulkner v. Jones,* 10 F.3d 226, 233 (4th Cir. 1993) (granting preliminary injunction to protect Equal Protection rights of woman seeking to enroll at the Citadel).

At the most basic level, if the BOP is permitted to sustain the arbitrary transfer of Mr. Tanner from FCI Fairton to USP Leavenworth, he will lose benefits and liberties that had been granted him by the BOP at FCI Fairton. At FCI Fairton Mr. Tanner had worked hard to qualify for the two vocational programs that would prepare him for re-integration into society - at the age of fifty-eight - with an opportunity to support himself and not become a burden on society. As a result of the BOP's arbitrary and capricious action, Mr. Tanner's ability to adjust to his reentry into society and support himself will be seriously compromised. Moreover, he will suffer an absolute, irrevocable loss of those liberties that, because of BOP policy, he had expected and relied upon.

**B.     The BOP Will Suffer No Harm and the Public Interest will be Served.**

Finally, the Bureau of Prisons will suffer no perceivable harm if the requested relief is granted. Other than a decrease in the overall population of USP Leavenworth by one inmate, the BOP will remain completely unaffected in a negative manner by Mr. Tanner's immediate return to FCI Fairton. To the contrary, the BOP will benefit from Mr. Tanner's return; the public interest and the BOP - within and without the penal system -

will be enhanced by the recognition of its commitment to rehabilitation over population management concerns.

### C.    Mr. Tanner Has Demonstrated a Likelihood of Success on the Merits.

### 1.    The Transfer Has Violated Mr. Tanner's Civil Rights.

Mr. Tanner acquired a liberty interest in remaining at FCI Fairton to complete the programs recommended to him by the staff and for which he qualified after years of effort. The BOP's arbitrary and capricious transfer deprived him of those liberty interests.

A protected liberty interest may arise from policy statements issued by the BOP and the warden of a federal facility. *Walker v. Hughes*, 558 F.2d 1247, 1254-56 (6th Cir. 1977). *See, also, Bills v. Henderson*, 631 F.2d 1287, 1289 (6th Cir. 1980) (finding liberty interest based on rule contained in "Adult Service Policies and Procedures Manual of the Department of Correction (Guidelines)"). Similarly, the Tenth Circuit found a protected liberty interest in an "official statement of policy" in a manual adopted by the administrator of one particular state penitentiary. *Gurule v. Wilson*, 635 F.2d 782, 785 (10th Cir. 1980). *See, also, Vitek v. Jones*, 445 U.S. 480, 489-90 (1980) (state statute created liberty interest precluding arbitrary transfer of prisoners to mental institutions); *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 12 (1979) (state statute created legitimate expectation of parole warranting due process protection); *Wolff v. McDonnell*, 418 U.S. 539, 557 (state statute created right to good-time credits).

In addition, Bureau of Prisons policy statements created a liberty interest in not having sanctions imposed without a finding of major misconduct. *Walker v. Hughes*, at 1255-56. Although Mr. Tanner's transfer was not denominated a sanction, the impact was

10

more severe than many disciplinary sanctions might have been. He was taken away from his training, in effect minimizing his capabilities to survive upon leaving prison, taking his pay grade, which is necessary for him to accumulate savings to get him started upon release, and sending him further from his family.

Plaintiff's transfer was stated by Mr. Tom Washburn, Chief of Correctional Programs for NERO to be "routine." And, as verified by Warden Schultz, there was no disciplinary component or other articulated reason except for the desire to "manage the population at these facilities" and give "preferred consideration to those inmates with release residences closer to USP Leavenworth." *See, Letter of Warden Schultz* (Exhibit 3).

While there are few affirmative specifications about a routine transfer, they should generally result in a location nearer to the release destination, and be consistent with the inmate's security level. *See, Program Statement 5100.07*, Chapter 10, p. 4 ¶ 2(d) (Exhibit 4). The applicable BOP policy on transfers is found at Program Statement 5100.07 (9/3/99). Chapter 10, pp. 24-25 sets forth a comprehensive explanation of twenty-nine transfer codes. *See, BOP Transfer Codes* (Exhibit 5).

Warden Schultz and the BOP would have us believe that Codes 313 (Nearer Release) and 318 (Increase Population) apply here. But the facts belie the assertion. In fact, USP Leavenworth, Kansas (designated as a HIGH security level institution) is 180 miles and 2 hours, 12 minutes more distant from Romulus, Michigan (Mr. Tanner's release destination) than is FCI Fairton, New Jersey (designated as a MEDIUM security level institution). *See, BOP Facility Description and MapQuest Calculation* (Exhibit 6).

11

Moreover, a review of recent BOP population levels reveals some interesting statistics. On September 16, 2005 the BOP Population Report showed USP Leavenworth with an inmate population of 915 and FCI Fairton with an inmate population of 1,417. Yet, on March 16, 2006 – six months later and only three days after Mr. Tanner's transfer – the BOP Population Report showed that USP Leavenworth's inmate population had already been nearly doubled, to 1,749, while FCI Fairton's population remained exactly the same, at 1,417 inmates. *See, BOP Population Report Excerpts,* 9/16/2005 & 3/16/2006 (Exhibit 7).

As will be demonstrated *inter alia,* decisions made by the BOP must not be arbitrary or capricious and must demonstrate "a rational connection between the facts found and the choice made." *See, generally,* 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983).

Mr. Tanner's transfer, in addition to being destructive of his rehabilitative accomplishments, was directly at odds with the BOP's Mission and Inmate Transfer Program Statements. Thus, the transfer violated plaintiff's liberty interest with respect to his placement rights.

Perhaps more importantly, the BOP program statements enabling participation in the vocational programs (Aquaculture Science & Cable Technician Program) give Mr. Tanner a reasonable expectation that he will be permitted to remain at his designated institution and complete the programs in which he is enrolled, [absent the existence of certain substantive predicates.] This creates a constitutionally cognizable liberty interest. See, Layton v. Beyer, 953 F.2d 839, n. 19 (3d Cir. 1992). If the transfer is not rescinded Mr. Tanner will have irretrievably lost his two year vocational training programs in cable

12

technology and aquaculture science. The programs are not offered at USP Leavenworth and if he does not return to FCI Fairton immediately he will not have time to re-enter the programs.

The Federal Correctional Institution (FCI) in Fairton is a MEDIUM security facility for male offenders. The United States Penitentiary (USP) in Leavenworth, Kansas, is a HIGH security facility housing male inmates. As a result of the transfer, Mr. Tanner is now incarcerated in a HIGH security facility, as opposed to the MEDIUM security facility at FCI Fairton. As even a lay observer of the federal penal system knows, life is far more difficult, and inmate vocational options are far more limited, at a HIGH security facility. The results of Mr. Tanner's transfer are in violation of general BOP policies regarding inmate transfer. He was moved to a higher security institution significantly more distant from his release location and the home of his family members. These conditions normally apply solely to "Disciplinary Transfers."

The Supreme Court has set out a single requirement for prisoners claiming the existence of a state-created liberty interest. An inmate must show "that particularized standards or criteria guide the State's decisionmakers." *See, Lucas v. Hodges,* 730 F.2d 1493 (D.C. Cir. 1984). Here, the identified BOP Program Statement(s) and the practice of adhering to it(them) created a liberty interest as required by *Olim v. Wakinekona,* 461 U.S. 238 (*quoting Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467 (1981) (Brennan, J., concurring)).

Because Mr. Tanner had a liberty interest at stake he was entitled to at least minimal due process safeguards -- notice of the reasons for the decision and some

13

opportunity to respond. *Lucas v. Hodges,* at 1504 n.20 (D.C. Cir. 1984); *See, also, White v. Keller,* 438 F. Supp. 110, 120 (D.Md. 1977).

### 2.    <u>Mr. Tanner Was Denied Procedural Due Process Rights.</u>

Under the Administrative Practices Act ("APA"), an agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *American Federation of Labor v. Chao,* 298 F.Supp.2d 104 (D.D.C. 2004).

In order for agency action to survive arbitrary and capricious review under the APA, the agency must adequately explain its result. *Public Citizen, Inc. v. FAA,* 988 F.2d 186, 197 (D.C. Cir. 1993); *Fed. Election Comm'n v. Rose,* 806 F.2d 1081, 1088 (D.C. Cir. 1986). *See, also, Pension Ben. Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 654 (1990) (an agency must "provide an explanation that will enable the court to evaluate the agency's rationale at the time of the decision"); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

The basis upon which an agency action is grounded must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, 'We must know what a decision means before the duty becomes ours to say whether it is right or wrong. *City of Vernon, Cal. v. FERC,* 845 F.2d 1042, 1046 (D.C. Cir. 1988). *See, also, Kisser v. Cisneros,* 14 F.3d 615, 619 (D.C. Cir. 1994) ("the court must determine whether the agency has articulated a 'rational connection between the facts found and the choice made.'").

In the instant case, the BOP provided no rational basis for its decision to take plaintiff away from an environment in which he was successfully rehabilitating himself and sending him to a place where it would be impossible for him to regain the same vocational opportunities, the UNICOR salary for savings, and the continuity in his environment that is a vital component of stability and release planning. In addition, there is no more than the generalized statement of a population management problem; and that fails to provide a rational predicate for the transfer. Mr. Tanner was doing quite well at FCI Fairton and should have been permitted to remain there.

This is the crux of the matter. Where is the justifiable rationale for removing an inmate from an environment where he was successfully rehabilitating himself in accord with policies and directives given to him by the BOP? Mr. Tanner has been incarcerated for more than twenty years. Surely, he is entitled to some deference to his rehabilitative goals. The BOP failed miserably in its selection of Mr. Tanner as a viable candidate for transfer to USP Leavenworth. It failed to consider the most important factors – his rehabilitation and preparation for societal re-integration – while moving him to a higher security level institution substantively farther from his release destination.

Accordingly, this BOP's action should be deemed arbitrary and capricious under the circumstances and Mr. Tanner's transfer should be immediately reversed.

**3.    Plaintiff Need Not Pursue the Administrative Remedy Process Under the Circumstances.**

Given the content of Warden Schultz's letter of March 7, 2006 (Exhibit 3), it is clear that the refusal to reverse Mr. Tanner's transfer was tendered in the names of the NERO Regional Director and the BOP Central Office Assistant Director for Correctional

15

Programs. Accordingly, Mr. Tanner construes that response to be a final decision resulting in his exhaustion of the BOP Inmate Administrative Remedy process.

In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West v. Bergland,* 611 F.2d 710, 715 (8th Cir. 1979), cert. denied, 449 U.S. 821 (1980). Application of this balancing principle is "intensely practical," *Bowen v. City of New York,* 476 U.S., at 484, citing *Mathews v. Eldridge,* 424 U.S. 319, 331, n. 11 (1976), because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided.

Here the decision was officially and finally stated to be a "routine transfer," with a reference to facility population concerns. Mr. Tanner had no opportunity to grieve or administratively protest the transfer decision because he was given only three days notice of it. Mr. Washburn, the Chief of Correctional Programs who denied the reversal, relegated plaintiff to the Inmate Administrative Remedy process when plaintiff became settled at USP Leavenworth. This is typically a three to five month process that would ultimately be decided by the hierarchy of the BOP, who imposed and approved the transfer in the first place. Mr. Tanner has had no administrative process to exhaust.

If he were compelled to go through the Inmate Administrative Remedy process, the decision, even if favorable, will come after many months of his absence from the two vocational training programs. It is unlikely that he would be able to make up the time in

16

the training program before his release. In addition, he will be deprived of months of Grade 1 UNICOR wages, which would not be applied retroactively after his eventual return to FCI Fairton. Under these circumstances, Mr. Tanner should not be required to pursue the administrative remedy process any further.

### 4. Plaintiff was denied equal protection of the law.

The equal protection clause guarantees that "all persons similarly circumstanced shall be treated alike." *Moss v. Clark*, 886 F.2d 686 (4th Cir. 1989). A complainant prevails if (1) persons who are similarly situated are treated differently by the government, and (2) the government fails to provide a rational basis for the dissimilar treatment. *Moreland v. United States*, 968 F.2d 655 (8th Cir. 1992). *See, Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-41 (1985).

A substantial roster of inmates avail themselves of the vocational training programs in which Mr. Tanner was enrolled. These programs, particularly the cable technician program, are especially useful in urban areas with extensive communications demands. Mr. Tanner will be fifty-eight when he leaves federal custody and will have the normal difficulties for a late middle-aged man in getting a job as well as those difficulties imposed by his lengthy incarceration. So far as can be seen, Mr. Tanner was not significantly different from his training colleagues, except perhaps he more acutely recognized the difficulties confronting him upon release and was bending every effort to overcome them.

The BOP violated Mr. Tanner's right to equal protection of the law under the Fifth Amendment because access to beneficial program participation – essential to

17

societal re-entry and rehabilitation – was withdrawn in a manner that treated Tanner differently than those inmates at FCI Fairton who were similarly situated.

## CONCLUSION

WHEREFORE, for the foregoing reasons and others that may be developed in a hearing on this motion, Mr. Tanner respectfully requests that this Court enter an order: (1) preliminarily and permanently enjoining the BOP from incarcerating him at USP Leavenworth; (2) requiring the BOP to transfer Mr. Tanner back to FCI Fairton forthwith; (3) mandating that the BOP reinstate Mr. Tanner's program participation and UNICOR pay grade on his return to FCI Fairton; and (4) enjoining the BOP from taking any retaliatory action as a result of the Court's order.

Respectfully submitted,

Brian W. Shaughnessy, DCN 89946
913 M Street, NW
Suite 101
Washington, DC 20001
(202) 842-1700

Attorney for the Plaintiff

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALGIENON TANNER**
**Fed. Reg No. 05818-040**
**USP Leavenworth**
**U.S. Penitentiary**
**P.O. Box 1000**
**Leavenworth, KS 66048-1000,**

     **Plaintiff,**

     **v.**

**FEDERAL BUREAU OF PRISONS,**    **Case No. _____**
**320 First Street, N.W.,**
**Washington D.C. 20534,**

**and**

**HARLEY G. LAPPIN,**
**Director, Federal Bureau of Prisons,**
**320 First Street, N.W.,**
**Washington D.C. 20534,**
**sued in his official capacity,**

     **Defendants.**

## CERTIFICATE OF NOTICE PURSUANT TO LOCAL RULE 65.1

Counsel for plaintiff Algienon Tanner, pursuant to Local Rule 65.1, certifies as

follows:

1. The time of making the application for a temporary restraining order is 1 pm on

    March 21, 2006.

2. Copies of all pleadings and papers filed in the action to date or to be presented

06 0529
**FILED**
MAR 2 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

to the court at the hearing, have been furnished to the adverse parties by hand-delivery

service on their attorney, the United States Attorney for the District of Columbia and on

the two defendants by hand-delivery service on the Bureau of Prisons, 320 First Street,

N.W., Washington D.C. 20534.

Respectfully submitted,

Brian W. Shaughnessy, DC 89946
913 M Street, N.W.
Suite 101
Washington, D.C. 20001
(202) 842-1700

Attorney for Plaintiff
Algienon Tanner