```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

ALGIENON TANNER,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 06-00529 RMU
                                    )
FEDERAL BUREAU OF PRISONS,          )
et al.,                             )
                                    )
            Defendants.             )
                                    )
_____ )
```

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTIONS FOR A TEMPORARY RESTRAINING
<u>ORDER AND FOR A PRELIMINARY INJUNCTION</u>

Plaintiff is a federal prisoner who was recently transferred (on February 15) from the Federal Bureau of Prison's (BOP's) Fairton, New Jersey, facility to a newly renovated wing at the agency's prison at Fort Leavenworth, Kansas. This was a routine transfer carried out to manage the population levels at the two facilities. <u>See</u> plaintiff's memorandum in support of the motion for a temporary restraining order at 6. Plaintiff seeks temporary and preliminary relief so as to stop what he asserts are violations of his constitutional rights in connection with his transfer. He asks that he be sent back to the Fairton, New Jersey, facility,

As we explain below, there is no waiver of sovereign immunity that would permit this case to proceed in the District of Columbia. Even if the Court were to look beyond its lack of

subject matter jurisdicion, there is no constitutionally protected right that was violated by the transfer.

### Lack Of Subject Matter Jurisdiction

At the outset, it is important to note what this case is not about – it is not a habeas action under 28 U.S.C. Section 2241 (where the venue for the action would be the district court that has jurisdiction over the warden of the place of petitioner's confinement), and it is not an action under 28 U.S.C. Section 2255 (which permits a prisoner to attack collaterally his conviction and which must be brought in the jurisdiction where he was convicted).  Plaintiff was convicted in the Southern District of Indiana.

Given the unavailability of these traditional methods of review in prisoner cases, the critical question becomes whether there is any other waiver of sovereign immunity that would allow this case to proceed in the District of Columbia.  The memorandum filed by plaintiff refers to the Administrative Procedure Act (APA) and use its terminology, e.g., that the decision to transfer plaintiff was arbitrary and capricious.  At page 14 of plaintiff's memorandum in support of his motion for a TRO he explicitly cites the APA.

Plaintiff is, apparently, relying on the APA's waiver of sovereign immunity to proceed in the District of Columbia.  There is, however, a fatal problem with this approach: 18 U.S.C.

Section 3625 explicitly states that the APA does not apply "to the making of any determination, decision, or order under this subchapter." The subchapter is captioned "Imprisonment," and it explicitly addresses the place of imprisonment and the transfer of a prisoner from one facility to another.

Given the inapplicability of the APA to this case, there is no waiver of sovereign immunity that would permit this action to proceed here. Sovereign immunity bars all suits against the United States except those suits that are permitted by the explicit terms of a statutory waiver of that immunity. Lane v. Pena, 518 U.S. 187, 192 (1996). Although plaintiff seeks relief under the Declaratory Judgment Act, that Act creates a remedy; it is not a waiver of sovereign immunity as to the United States. Balistieri v. United States, 303 F.2d 617 (7th Cir. 1962); Tashimi v. Administrative Office of the United States Courts, 719 F.Supp. 881, 887, affirmed 967 F.2d 1264 (9th Cir. 1989). The simple fact is that there is no waiver of sovereign immunity for this case in the District of Columbia.

### There Is No Constitutional Violation

Plaintiff contends that he has a liberty interest in attending the vocational programs that were available at the Fairton facility and a liberty interest in the prison industry wages that he was earning at Fairton but may not be able to earn

at Fort Leavenworth.  He cites BOP policy and program statements as the sources of the claimed liberty interests.

It is well established that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meachum v. Fano, 427 U.S. 215, 224 (1976). For this reason, even a substantial adverse change in the lawful conditions of an inmate's confinement does not by itself trigger the protection of the Due Process Clause. Id. at 224-225; Montanye v. Haymes, 427 U.S. 236, 242 (1976); Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-461 (1989). Only when conditions are "qualitatively different from the punishment characteristically suffered by a person convicted of crime" has the Court held that the Due Process Clause, of its own force, creates a liberty interest requiring procedural protections.  Vitek v. Jones, 445 U.S. 480, 493 (1980) (interest in avoiding transfer to mental institution); see Washington v. Harper, 494 U.S. 210, 221-222 (1990) (interest in being free from involuntary administration of psychotropic drugs).

Based on the recognition that a prisoner's liberty interests are substantially diminished by virtue of his lawful conviction and that "the decision where to house inmates is at the core of

4

prison administrators' expertise," McKune v. Lile, 536 U.S. 24, 39 (2002) (plurality opinion), the Supreme Court has repeatedly held that the decision to transfer an inmate to a more restrictive facility does not trigger a liberty interest under the Due Process Clause. As the Court explained in Meachum in rejecting the claim that the State's transfer of prisoners to a maximum-security institution implicated the Due Process Clause, there is no liberty interest protecting against "transfer from one institution to another within the state prison system." 427 U.S. at 225. That is because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Ibid. Accordingly, the disagreeable nature of life in another institution with "more severe rules" does not mean, in itself, that a liberty interest is implicated. Ibid. See Montanye, 427 U.S. at 242 ("The [Due Process] Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive."); Olim v. Wakinekona, 461 U.S. 238, 248 (1983) ("The reasoning of Meachum and Montanye compels the conclusion that an interstate prison transfer, *** does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself."); Greenholtz, 442 U.S. at 11 ("[T]he inmate's hope that

he will not be transferred to another prison, *** is not protected by due process.").

A line of post-Meachum cases emphasized dictum in Meachum to suggest that the State itself could create a liberty interest cognizable under the Due Process Clause by limiting the discretion of prison authorities to effect a prison transfer. See 427 U.S. at 228; Montanye, 427 U.S. at 243; Olim, 461 U.S. at 249. The Supreme Court rejected this "dictum in Meachum" in Sandin, 515 U.S. at 479, and changed the methodology for determining whether a State has created a liberty interest. Rather than focus on the wording of state laws to determine whether that language has created an enforceable interest, the Sandin Court held that it would look to whether the State has "created an interest of 'real substance,' " id. at 480, by imposing a "restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484 (internal citations omitted). Nothing in Sandin's rejection of the focus on mandatory or discretionary regulations signals any retreat from the Supreme Court's consistent

recognition that transfers between institutions of varying security does not implicate a liberty interest.[1]

The Supreme Court's recent decision in <u>Wilkinson v. Austin</u>, 125 S.Ct. 2384 (2005), is consistent with the line of cases discussed above. At issue in <u>Wilkinson</u> was whether a prisoner was entitled to due process protection before being sent to a "supermax" prison. The conditions at such a prison are extraordinarily restrictive – the prisoner is confined to a small cell for 23 hours of the day, his meals are taken in his cell, there is a light in the cell that is never turned off (although it may be dimmed), and there is no conversation permitted between the cells. Due to the atypical nature of these conditions, the Court found that prisoners were entitled to due process protection before being sent to such a facility. The Court, however, repeated its holding in <u>Sandin</u>:

> After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." Id., at 484, 115 S.Ct. 2293.
> Applying this refined inquiry, Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." Id., at 485, 115 S.Ct. 2293. We

---

[1] This paragraph and the preceding two paragraphs are from the United States' amicus brief in <u>Wilkinson v. Austin</u>, 125 S.Ct. 2384 (2005).

7

> noted, for example, that inmates in the general population experienced "significant amounts of 'lockdown time' " and that the degree of confinement in disciplinary segregation was not excessive. Id., at 486, 115 S.Ct. 2293. We did not find, moreover, the short duration of segregation to work a major disruption in the inmate's environment. Ibid.
> The Sandin standard requires us to determine if assignment to OSP "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., at 484, 115 S.Ct. 2293.

Wilkinson, 125 S.Ct. at 2394.

Under the principles enunciated by the Supreme Court, a prisoner cannot have a liberty interest in the type of vocational programs available to him or the level of the wages paid to him for prison industry work. The differences in vocational programs and prison-industry work between institutions is an ordinary incident of a prison transfer. It does not implicate the Due Process Clause.[2]

## Conclusion

For the reasons set forth above, the motions for a temporary restraining order and a preliminary injunction should be denied. Attached is a draft order reflecting such a disposition.

        Respectfully submitted,

        KENNETH L. WAINSTEIN, DC Bar # 451058
        United States Attorney

---

Since there is no waiver of sovereign immunity and no constitutional violation, the Court need not consider plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act.

8

```
                              RUDOLPH CONTRERAS, DC Bar # 434122
                              Assistant United States Attorney
                                        /s/
                              FRED E. HAYNES, DC Bar #165654
                              Assistant United States Attorney
                              555 4th Street, N.W., Room E-4110
                              Washington, D.C. 20530
                              202.514.7201
```

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

ALGIENON TANNER,              )
                              )
            Plaintiff,        )
                              )
       v.                     )   Civil Action No. 06-00529 RMU
                              )
FEDERAL BUREAU OF PRISONS,    )
et al.,                       )
                              )
            Defendants.       )
                              )
_____)
```

ORDER

UPON CONSIDERATION of the motions for a temporary restraining order and for a preliminary injunction, and the opposition thereto, it is this _____ day of _____, 2006,

ORDERED that the motions are denied.  This is an appealable order.

                                          UNITED STATES DISTRICT JUDGE

Copies to counsel of record