**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALGIENON TANNER**<br>**Fed.Reg.No. 05818-040**<br>**USP Leavenworth**<br>**U.S. Penitentiary**<br>**PO Box 1000**<br>**Leavenworth, KS 66048-1000**<br><br>     **Plaintiff,**<br><br>     **v.**<br><br>**FEDERAL BUREAU OF PRISONS,**<br>**320 First Street, N.W.,**<br>**Washington D.C.  20534,**<br><br>**and**<br><br>**HARLEY G. LAPPIN,**<br>**Director, Federal Bureau of Prisons,**<br>**320 First Street, N.W.,**<br>**Washington D.C.  20534,**<br>**sued in his official capacity,**<br><br>     **Defendants.** | **Civil Action No.  06-00529 (RMU)** |

<u>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

COMES NOW Algienon Tanner, by and through counsel, and submits this Opposition to Defendant's Motion to Dismiss. In support whereof, Plaintiff relies on the following:

In its Motion, Defendant asserts two reasons why Mr. Tanner should not be granted the relief he seeks: (1) Lack of Subject Matter Jurisdiction and (2) No Constitutional Violation. We will explain here why the Defendant is incorrect in its

assertions and set out additional reasons why this Court should order that the BOP return Mr. Tanner to FCI Fairton, New Jersey, reinstate his UNICOR pay grade, and reenroll him in the Cable Technician and Aquaculture Programs – all at the earliest possible date.

I.    **The United States Has Waived Its Sovereign Immunity and the Court Has Subject Matter Jurisdiction.**

The Defendant has conditioned its assertion of lack of subject matter jurisdiction on "what this case is not about" and the fact that the Administrative Procedure Act ("APA") was cited as one reason for granting Mr. Tanner's requested relief. Defendant's argument is disingenuous for several reasons.

It is more appropriate to consider what this case *is* about – the purposeful trampling of Mr. Tanner's constitutionally protected liberty interest, a constitutional violation of the Equal Protection Clause of the Fifth Amendment and, as we will show, a pattern of behavior by the BOP that violated Mr. Tanner's civil rights.

Given its unique location, the District of Columbia Circuit has probably considered more cases concerning sovereign immunity than any other circuit court. Its wisdom was recently published in *Webman v. Federal Bureau of Prisons,* No. 05-5031 (D.C. Cir. 3/28/2006) and stated that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212 (1983); *see, also, United States v. Sherwood,* 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit.") (citations omitted). The federal government may waive its sovereign immunity by statute, *but that waiver "must be unequivocally expressed in statutory text." Lane v. Peña,* 518 U.S. 187, 192 (1996)

2

(citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33-34, 37 (1992)) (Emphasis supplied); *see, also, United States v. Mitchell,* 445 U.S. 535, 538 (1980); *United States v. King,* 395 U.S. 1, 4 (1969).

That unequivocal statutory expression may be found in 18 U.S.C. § 3626 (a) (1) (A), (a) (1) (B), and (a) (2), as follows:

Sec. 3626. Appropriate remedies with respect to prison conditions

-STATUTE-(a) Requirements for Relief. -

(1) Prospective relief. - (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

(B) The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless –

(i) Federal law requires such relief to be ordered in violation of State or local law;

(ii) the relief is necessary to correct the violation of a Federal right; and

(iii) no other relief will correct the violation of the Federal right.

(2) Preliminary injunctive relief. - In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.

The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1) (B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the

date that is 90 days after its entry, unless the court makes the findings required under subsection a) (1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

Here, 18 U.S.C. § 3626 provides specific language that is the "sort of unequivocal waiver that our precedents demand," *Lane,* 518 U.S. at 198, because that Section, which sets out the "appropriate remedies with respect to prison conditions," as well as the requirements for prospective relief and preliminary injunctive relief, is not susceptible to more than one interpretation; *i.e.,* why would Congress include the statutory language of § 3626 in Chapter 229 (Postsentence Administration), Subchapter C (Imprisonment), if it did not intend the United States to waive its sovereign immunity in matters that are at issue under that statute? If a statute addresses litigation procedures involving injunctive relief pursuant to a specific statute, it must be readily obvious that the United States has agreed to be sued under the provisions of that statute.

Moreover, Mr. Tanner has also raised an argument pursuant to the Due Process (Equal Protection) Clause of the Fifth Amendment. It is well settled by the unambiguous language of the constitution that the United States has waived any claim of sovereign immunity related thereto (no person shall be … deprived of life, liberty, or property, without due process of law). Development of substantive due process is noted and treated under the Fourteenth Amendment. But current application seems first to have been enunciated by Chief Justice Taft, who observed that the due process and equal protection clauses are "associated" and that "[i]t may be that they overlap, that a violation of one may involve at times the violation of the other, but the spheres of the protection they offer are not coterminous.[Due process] tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty and

4

property, which the Congress or the legislature may not withhold. Our whole system of law is predicated on the general, fundamental principle of equality of application of the law." *Truax v. Corrigan,* 257 U.S. 312, 331 (1921). *See, also, Hirabayashi v. United States,* 320 U.S/ 81, 100 (1943).

Accordingly, the United States has waived its sovereign immunity in at least two instances relating to Mr. Tanner's requested relief and the Court should find that it has subject matter jurisdiction.

## II.   There Are Constitutional Violations That Require Relief.

Justice Steven's dissent in *Meachum v. Fano et al,* 427 U.S. 215 (1976), in which he was joined by Justices Brennan and Marshall, is most instructive when considering  the creation of a liberty interest that triggers the protection of the Due Process Clause.

> Imprisonment is intended to accomplish more than the temporary removal of the offender from society in order to prevent him from committing like offenses during the period of his incarceration. *While custody denies the inmate the opportunity to offend, it also gives him an opportunity to improve himself and to acquire skills and habits that will help him to participate in an open society after his release. Within the prison community, if my basic hypothesis is correct, he has a protected right to pursue his limited rehabilitative goals, or at the minimum, to maintain whatever attributes of dignity are associated with his status in a tightly controlled society.* It is unquestionably within the power of the State to change that status, abruptly and adversely; but if the change is sufficiently grievous, it may not be imposed arbitrarily. In such case due process must be afforded. (Emphasis supplied).  427 U.S. at 228.

The purposes of affording such due process are further explicated in the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections 83 (1967), which states in pertinent part:

> A first tenet of our governmental, religious, and ethical tradition is the intrinsic worth of every individual, no matter how degenerate. It is a radical departure from that tradition to subject a defined class of persons, even criminals, to a regime in which their right to liberty is determined by officials wholly unaccountable in the exercise of their power.

Inmates have a constitutionally protected liberty interest in avoiding certain re-assignment, which may arise from state policies or regulations, subject to the important limitations set forth in Sandin, which requires a determination whether OSP assignment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U. S. at 483. Wilkinson v. Austin, 125 S.Ct. 2384, 2388 (2005). The termination of a liberty interest in the prison context requires some orderly process, however informal. Morrissey v. Brewer, 408 U.S. 471, 482.

Defendants claim that their completely depriving plaintiff of his long sought and hard earned opportunities to obtain meaningful vocational education before his release is equivalent to the thirty day placement in segregation considered in Sandin. Plaintiff has been transferred from a lower security level to a higher, farther away from his release to a high security penitentiary where no similar vocational training opportunities are available. That, along with his being stripped of his high grade at Unicor (a prerequisite to vocational placement) is clearly an atypical and significant hardship on plaintiff beyond that imposed on others similarly situated.

In Turner v. Safley, 482 U.S. 78 (1987) the Court set forth standards for evaluating constitutional claims of inmates in the context of effective prison

administration. These standards were whether there was a valid rational connection between the regulation and a legitimate governmental interest, an alternative means of exercising the right, the impact on other inmates and allocation of resources generally and the absence of ready alternatives to the regulation.

Here there is no alternative means of plaintiff obtaining the vocational training so necessary to his reentry into the society nor is there any perceivable impact on other inmates. The governmental interest is set forth in the LEGAL RESOURCE GUIDE TO THE FEDERAL BUREAU OF PRISONS, 2003, which, in pertinent part states:

> The Federal Bureau of Prisons (BOP) was established in 1930 to provide more progressive and humane care for Federal inmates, to professionalize the prison service, and to ensure consistent and centralized administration of the 11 Federal prisons in operation at that time. . . . The mission of the BOP is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

The arbitrary abandonment of plaintiff's retraining will limit opportunities for offenders like plaintiff to become adjusted to reentry into the community as law-abiding citizens. In plaintiff's case he is being deprived of a right he earned through hard work over at least two years that would retrain him to enter society with a reasonable chance to succeed. Thus, plaintiff is being deprived of a liberty interest with no commensurate benefit to the government and in derogation of the mission of the BOP, all in violation of his due process rights under the Constitution. Mr. Tanner submits that his arbitrary transfer, loss of pay grade, and forced withdrawal from rehabilitative specialized programs are distinguishable circumstances not related to "the ordinary incidents of prison life" that must give rise to a constitutionally protected liberty interest.

### III.     **Mr. Tanner's Transfer Was Discriminatory and Does Not Meet the Rationality Standard of Equal Protection Review.**

The Fourteenth Amendment's Equal Protection Clause requires States to treat similarly situated persons alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). The Federal Bureau of Prisons is subject to that requirement by virtue of the Fifth Amendment's guarantee of due process of law. *See, Bolling v. Sharpe,* 347 U.S. 497 (1954). The Constitution, however, "does not require things which are different in fact or opinion to be treated in law as though they were the same.' *Plyler v. Doe,* 457 U.S. 202, 216 (1982) (quoting *Tigner v. Texas,* 310 U.S. 141, 147 (1940)); *accord, Michael M. v. Superior Court, 450* U.S. 464, 469 (1981). Thus, the "[d]issimilar treatment of dissimilarly situated persons does not violate equal protection." *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir. 1994). The threshold inquiry in evaluating an equal protection claim is, therefore, "to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." *United States v. Whiton,* 48 F.3d 356, 358 (8th Cir. 1995).

Whether two people (or classes of people) treated differently by the government are similarly situated depends on the purpose for which the government is acting. *Cf. Klinger v. Department of Corrections,* 31 F.3d 727, 734-35 (8th Cir. 1994) (McMillian, J., dissenting) (noting that men and women are imprisoned for the same purpose and are similarly situated "with respect to the goal of rehabilitation"). Here Mr. Tanner was similarly situated with all other participants in the Cable Technician and Aquaculture Science Programs with respect to the goal of rehabilitative participation.

Discrimination based on place of custody may not be upheld unless it meets the rationality standard of equal protection review. *McGinnis v. Royster,* 410 U.S. 263 (1973); *United States v. Thompson,* 452 F.2d 1333 (D.C. Cir. 1971) (holding that equal protection would be denied by application to persons charged with criminal violations of federal law in the District of Columbia of a higher bail standard than was applied to persons charged with the same crime in federal courts outside the District and finding no rational basis for the exception).

Mr. Tanner is an aging inmate, who would be barely able to complete his vocational program at Fairton before release; he is more in need of the program and less able than other inmates to obtain similar vocational training in the time left before his release.. Because Mr. Tanner was similarly situated with all other participants in the Cable Technician and Aquaculture Science Programs with respect to the goal of rehabilitative participation, there was no rational basis for Mr. Tanner's arbitrary transfer and that he has been denied equal protection in accord with the Fifth Amendment's Due Process provisions

IV. **Mr. Tanner's Transfer is Part of a Disturbing and Continuing Pattern of Illegal and Arbitrary Behavior by the Bureau of Prisons.**

In 2000 Mr. Tanner was incarcerated at FCI McKean, Pennsylvania - a LOW security institution - and working at Federal Prison Industries ("UNICOR"). While he was at the UNICOR factory, a BOP SWAT team appeared, removed him and about 25 other inmates from the facility and placed them in segregation. All were charged with prohibited acts that were in the "greatest" category of the disciplinary severity scale (inciting a work stoppage and food strike).

9

Mr. Tanner was immediately transferred to the U.S. Penitentiary at Lewisburg, Pennsylvania and placed in administrative detention awaiting a hearing by the BOP Disciplinary Hearing Officer ("DHO") pursuant to the BOP's Disciplinary Process as set forth in Program Statement 5270.07. At the conclusion of the DHO hearing, Mr. Tanner was found NOT GUILTY of the charged violations. However, at that point an arbitrary "management variable"[1] was assigned to his security level and he was transferred to FCI Fairton, a MEDIUM security facility. *See, Declaration of Paul C. Kurtz*, 4/03/2006 (Exhibit 1).

Mr. Tanner attempted to have the management variable removed by utilizing the BOP's Administrative Remedy Process but received no relief. He then filed an action in the United States District Court for the District of New Jersey but it was denied and the Third Circuit affirmed the decision of the district court.

While we do not have documentary evidence related to the assertions made in this section, Mr. Tanner advised Mr. Kurtz that he placed the supporting documents in the legal mailbox at USP Leavenworth for pick-up on Monday, April 3, 2006. Accordingly, the documents should be available for the Court's inspection at a subsequently scheduled hearing.

It appears that the BOP has engaged in a continuing pattern of illegal and arbitrary behavior in violation of Mr. Tanner's constitutional rights.

---

[1] "Management Variables are applied to reflect and support the professional judgment of Bureau staff in order to ensure the placement in the most appropriate security level institution. They are required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level." *See, BOP Program Statement* 5100.07, Chapter 7, Page 9. In the instant case there appears to be no rational basis for imposing the management variable. To the contrary, the management variable seems to have been imposed as a "punishment" notwithstanding Tanner's being found not guilty of the charged prohibited acts.

V.    **Conclusion.**

This Court has subject matter jurisdiction, Mr. Tanner has a constitutionally protected liberty interest in continuing his vocational and societal rehabilitation, he was discriminated against in an arbitrary manner and in violation of the equal protection and due process provisions of the Fifth Amendment, and he has been the victim of a continuing pattern of illegal behavior by the Bureau of Prisons.   For the foregoing reasons and others that may be developed in a hearing on this motion, Mr. Tanner respectfully requests that this Court enter an order: (1) preliminarily and permanently enjoining the BOP from incarcerating him at USP Leavenworth; (2) requiring the BOP to transfer Mr. Tanner back to FCI Fairton forthwith; (3) mandating that the BOP reinstate Mr. Tanner's program participation and UNICOR pay grade on his return to FCI Fairton; and (4) enjoining the BOP from taking any retaliatory action as a result of the Court's order.

Respectfully submitted,

_____
Brian W. Shaughnessy, DCN 89946
913 M Street, NW
Suite 101
Washington, DC  20001
(202) 842-1700

Attorney for the Plaintiff