UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALGIENON TANNER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 06-0529 (RMU) |
| | : | |
| v. | : | |
| | : | Document Nos.: 2, 3 |
| FEDERAL BUREAU OF PRISONS *et al*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Denying the Plaintiff's Motion for a Preliminary Injunction[1]

**I.    INTRODUCTION**

The plaintiff is a Federal Bureau of Prisons inmate. On February 15, 2006, the defendant transferred the plaintiff from Federal Correctional Institution ("FCI") Fairton, New Jersey to United States Penitentiary ("USP") Leavenworth, Kansas. The plaintiff brings this suit, asking the court to compel the defendant[2] to return the plaintiff to Fairton, alleging that a permanent transfer will deprive him of participation in the vocational training programs at Fairton. Before the court are the plaintiff's motions for a temporary restraining order ("TRO") and a preliminary injunction ("PI"), as well as the defendant's motion to dismiss. The court now turns to the plaintiff's motions.

---

[1]    The plaintiff filed a motion for a temporary restraining order ("TRO") as well as one for a preliminary injunction ("PI"). In the plaintiff's two-page motion for a PI, he refers the court to the substantive arguments in his motion for a TRO. Therefore, the court refers only to the latter, although it is ruling on both motions.

[2]    The plaintiff names as defendants the Federal Bureau of Prisons and Harley G. Lappin, Director of the Federal Bureau of Prisons, in his official capacity. The court refers to them collectively as "the defendant."

## II.   BACKGROUND

### A.   Factual History

The plaintiff has been in the federal prison system for more than 20 years. Pl.'s Mot. for TRO ("Pl.'s Mot.") at 4. Since January 4, 2001, the plaintiff has been incarcerated at Fairton, and his release is scheduled to occur on September 29, 2008. *Id*. at 2. To prepare for reentry into society, the plaintiff sought educational and vocational training at Fairton by enrolling in the aquaculture program. *Id*. at 2-4.

At the time of his transfer, the plaintiff had completed eight months of the two-year aquaculture program. *Id*. at 3. He also worked to qualify for a cable technician program. *Id*. The cable technician program requires participants to have a Grade 1 pay scale rating. *Id*. at 2-3. For two years, the plaintiff worked to progress through the pay scale from Grade 4 to Grade 1 so that he could earn a place in the program. *Id*. at 3.

On February 9, 2006, the defendant's staff informed the plaintiff that he was subject to an immediate transfer to Leavenworth. *Id*. at 5. The plaintiff's family requested the assistance of Paul C. Kurtz, Executive Director of Federal Inmate Advocates, to prevent the plaintiff's transfer. *Id*. at 5. Kurtz contacted Tom Washburn, Chief of Correctional Programs, to request the reversal of the defendant's decision to transfer the plaintiff. *Id*. at 5. On February 13, 2006, Washburn rejected this request, informing Kurtz that the inmate transfer was routine, and that the plaintiff could request transfer back to Fairton through the Inmate Administrative Remedy process. *Id*. at 5. Kurtz then sent a letter to the Bureau of Prison's regional director and requested that the defendant reverse the plaintiff's transfer. *Id*. at 5.

On February 15, 2006, the defendant transferred the plaintiff to Leavenworth. Def.'s Opp'n to Pl's Mot. ("Def.'s Opp'n") at 1. On March 16, 2006, Kurtz received a letter from the warden at Fairton, which stated that the transfer to Leavenworth "was not punitive or disciplinary in nature and was just one of many transfers approved in an effort to manage the population at these facilities." *Id*. at 6. The warden explained that those subject to a transfer were medium security inmates with release dates in excess of one year, and that individuals whose release residences were closer to Leavenworth received "preferential consideration." *Id*. at 6. He also told Kurtz to "[r]est assured that work opportunities, as well as education and vocational training programs, to assist [the plaintiff] with his re-entry initiatives are available at USP Leavenworth." *Id*., Ex. 3. Because the plaintiff has approximately 30 months left in his sentence and will serve the last six months at a halfway house, the plaintiff asserts that "unless he is immediately returned to FCI Fairton and re-enrolled in the Aquaculture and Cable programs he will lose any possibility of program completion prior to his scheduled release date." *Id*. at 4 n.1.

### B.   Procedural History

On March 21, 2006, the plaintiff filed suit against the defendant and brought these motions for injunctive relief pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626.[3] Alleging that his vocational training constitutes a protected liberty interest, the plaintiff claims

---

[3]   Curiously, the plaintiff fails to assert any statutory basis for his suit in either his complaint or his motion for a temporary restraining order. In his complaint, the plaintiff cites 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 65. These statutes speak to the general jurisdiction of this court to hear complaints arising out of federal law, and its authority to issue certain types of relief. The plaintiff set forth no statute, however, which authorized him to bring this suit against the federal government. Only in his reply did he cite 18 U.S.C. § 3626 as conferring jurisdiction on this court to hear his claims. This statute, *inter alia*, authorizes the court to provide relief for unconstitutional prison conditions or "the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2).

that the defendant deprived him of that interest in violation of constitutional due process and equal protection. *Id*. at 14-18. The defendant opposes the motion on the grounds that this court lacks subject matter jurisdiction because the defendant is immune from suit. Def.'s Opp'n at 1-2. The defendant also asserts that the plaintiff has no liberty interest in vocational training and, therefore, the plaintiff has suffered no constitutional violation. *Id*. at 4-8. On March 29, 2006, in addition to opposing the plaintiff's motion, the defendant brought a motion to dismiss. The court now turns to the plaintiff's motion.

### III.   ANALYSIS

#### A.   The Court Denies the Plaintiff's Motion for Injunctive Relief

The plaintiff asserts that his transfer to Leavenworth deprives him of his liberty interests in several ways and sues for injunctive relief pursuant to 18 U.S.C. § 3626.[4] The defendant counters that the plaintiff has no constitutionally-protected interest in participating in the vocational programs. Def.'s Opp'n at 3-8. Although the plaintiff demonstrates irreparable harm, he fails to show a substantial likelihood of success on the merits. For this reason, the court denies the plaintiff's motion for injunctive relief.

---

[4]   18 U.S.C. § 3626 provides that in "any civil action with respect to prison conditions . . . the court may enter a temporary restraining order or an order for preliminary injunctive relief." 18 U.S.C. § 3626(a)(2). The statute applies to "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2).

### B.     Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury.  A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction.

*CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). As the Supreme Court has said, "[I]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

**C.    The Plaintiff Fails to Demonstrate a Substantial Likelihood of Success on the Merits**[5]

The plaintiff argues that he is likely to succeed on the merits of his claim because he has a constitutionally-protected liberty interest in participating in the vocational programs at Fairmont. Pl.'s Mot. at 10. The plaintiff bears the burden of establishing "by a clear showing" that he, indeed, enjoyed a constitutionally-protected interest and that he was denied due process and

---

[5]  Although the plaintiff correctly states the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, standard governing the court's review of an agency's action, he entirely fails to argue why or how the APA applies to the defendant. The defendant correctly asserts that the APA is inapplicable to matters of imprisonment. 18 U.S.C. § 3625 (stating that the APA does not apply to any decision under the subchapter 18 U.S.C. § 3621 dealing with imprisonment and including the designation of place of imprisonment or transfer of prisoners). To the extent that the plaintiff brings his claims under the APA, therefore, the court lacks subject-matter jurisdiction, and the plaintiff fails to demonstrate a substantial likelihood of success on the merits.

equal protection rights. *Mazurek*, 520 U.S. at 972. Although "prisoners do not shed all constitutional rights at the prison gate," incarceration does bring a "necessary withdrawal or limitation of many privileges and rights." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal citations omitted). Constitutional protections do arise when a prisoner has a recognized liberty interest created by state statutes and policies. *Id*. at 486-87.

The plaintiff argues that the defendant, through a Unit Team assigned to the plaintiff, recommended that the plaintiff pursue educational and vocational training and supported his progress through this process. Pl.'s Mot. at 2, 3, 9. The plaintiff asserts that the Unit Team's actions created a liberty interest in Fairton's vocational programs, and that a transfer to Leavenworth deprives him of this liberty interest. *See generally* Pl.'s Mot.

The defendant counters that the court lacks jurisdiction over the plaintiff's claims, and points to the plaintiff's failure to identify a statute which waives sovereign immunity and confers jurisdiction on this court.[6] *See generally* Def.'s Opp'n. The defendant also asserts that the plaintiff does not have a protected interest in the vocational training programs. *Id*. at 2.

**1.    The Plaintiff Fails to Demonstrate a Violation of His Due Process Rights**

The plaintiff argues that the defendant wrongfully deprived him of participation in Fairton's vocational programs without any due process of law. Pl.'s Mot. at 14-15. As the Supreme Court did in *Sandin v. Conner*, this court begins with the proposition that "the Due Process Clause does not protect every change in the conditions of confinement having a

---

[6]   The defendant claims that it enjoys sovereign immunity, and the court cannot, therefore, grant the plaintiff relief. Def.'s Opp'n at 1-3. 18 U.S.C. § 3626, however, constitutes a waiver in that it authorizes suits arising from prison conditions or actions of prison officials. *See supra* n.4.

substantial adverse impact on the prisoner." *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). Indeed, "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin*, 515 U.S. at 480. For example, prisoners have no right to be housed at a particular institution, *Meacham*, 427 U.S. at 224, no right to rehabilitation, *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985), and no right to vocational or educational programs in prisons, *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Graza v. Miler*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied*, 459 U.S. 1150 (1983).

At the same time, state statutes or policies can create a prisoner's liberty interest in being free from an "atypical, significant deprivation" or a deprivation that "will inevitably affect duration of his sentence." *Sandin*, 515 U.S. at 486-87. In other words, for the plaintiff to make a showing of a likelihood of success on the merits, he must demonstrate that his transfer and subsequent inability to participate in the vocational programs at Fairton constitute either an "atypical, significant deprivation" or one that "will inevitably affect the duration of his sentence." *Id.*

The denial of an inmate's participation in educational and vocational programs does not constitute an "atypical, significant deprivation." *Sandin*, 515 U.S. at 480. A prisoner has no right to receive educational or vocational training. *Rhodes*, 452 U.S. at 348. The court, therefore, cannot view the plaintiff's removal from these programs as "atypical." Indeed, the exclusion of a prisoner from educational programs merely "leaves the prisoner with the normal attributes of confinement." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (quoting *Stanley v. Litxcher*, 213 F.3d 340, 342 (7th Cir. 2000)).

The plaintiff could still claim a liberty interest in his participation in the training programs if the programs would "inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 487. Here, the plaintiff does not allege that the programs at Fairton will affect the duration of his sentence. Even if the plaintiff raised such allegations, however, the vocational programs at issue are not liberty interests requiring due process because it is not "inevitable that [the plaintiff] would complete an educational program" and earn benefits derived from the program. *Zimmerman*, 226 F.3d at 572 (quoting *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996)) (concluding that where the plaintiff could not plead with certainty that he would complete an educational program at his original institution and earn good time credits toward early release, there was no due process violation for removing him from the program by transferring him to an institution without educational programs). Quite simply, deprivation of education or training alone does not violate the Constitution. *Zimmerman*, 226 F.3d at 572 (stating that the opportunity to earn good time points through participation in vocational training and substance abuse programs is not an interest protected by due process).

Likewise, the plaintiff's transfer is not protected by constitutional due process. Transfers are not an atypical or significant deprivation, as they are "ordinarily contemplated by a prison sentence." *Sandin*, 515 U.S. at 480 (stating that "the transfer to less amenable quarters for nonpunitive reasons was 'ordinarily contemplated by a prison sentence'"); *see also Olim v. Wakinekona*, 461 U.S. 238, 247 (1983) (stating that even a transfer involving long distances remains within constitutional limits). This is the case even if the transfer causes a "significant modification in conditions of confinement." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (stating

that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence").

Moreover, the defendant has authority to, at any time, "direct the transfer of a prisoner from one penal or correctional facility to another," 18 U.S.C. § 3621(b), and courts give deference to prison officials' exercise of this authority, *Women Prisoners of the Dist. of Columbia Dept. of Corr. v. Dist. of Columbia*, 93 F.3d 910, 931-32 (D.C. Cir. 1996). The court is mindful that the defendant is entitled to deference when it acts within its prison management authority. *Pitts v. Thornburg*, 866 F.2d 1450, 1453 (D.C. Cir. 1989) (stating that "issues of prison management are, both by reason of separation of powers and highly practical considerations of judicial competence, peculiarly ill-suited to judicial resolution" and "courts should be loath to substitute their judgment for that of prison officials and administrators").

In sum, the plaintiff's removal from the training programs does not constitute an "atypical or significant deprivation," nor does it affect the duration of his sentence. Therefore, the plaintiff has no protected liberty interest. *Sandin*, 515 U.S. at 486-87. Similarly, without a protected liberty interest in vocational programs, the plaintiff's transfer to Leavenworth does not violate due process or equal protection because transfers are not protected by the constitution. *Id*. at 480. Consequently, the plaintiff fails to make a clear showing that he will succeed on his due process claims. *Mazurek*, 520 U.S. at 972.

2.  **The Plaintiff Fails to Demonstrate a Violation of His Equal Protection Rights**

The plaintiff also fails to demonstrate a likelihood of success on the merits of his equal protection claims. To succeed on a claim that the defendant has violated his right to equal protection, the plaintiff must show that he was treated differently than similarly-situated

individuals. *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (stating that "the Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike") (internal citations omitted). The plaintiff asserts that he was treated differently than other individuals in his vocational training programs. Pl.'s Mot. at 17. Specifically, the plaintiff states that a "substantial roster of inmates" participated in the programs and that the plaintiff "was not significantly different from his training colleagues." *Id.*

Although these allegations raise the spectre of a viable equal protection claim, the plaintiff fails to make the requisite showing that he was similarly situated. *Women Prisoners of the Dist. of Columbia Dep't of Corr.*, 93 F.3d at 924 (stating that in determining whether prisoners are similarly situated, a court ought to look to their custody levels, sentence structures, purposes of incarceration, the characteristics of the inmates at the prison, the size of the institution, the inmates' security levels, types of crimes, length of sentences and other special characteristics) (internal citations omitted). Thus, the plaintiff's bare allegations do not constitute a clear showing that the plaintiff will succeed on the merits of his equal protection claims. *Mazurek*, 520 U.S. at 972.

### 4. The Plaintiff Demonstrates Irreparable Injury

The plaintiff argues that a permanent transfer to Leavenworth will cause irreparable injury by stripping him of the ability to participate in the vocational programs at Fairton. Pl.'s Mot. at 8. Specifically, the plaintiff has worked for two years to progress from Grade 4 to Grade 1, the pay grade required for participation in the cable training program. *Id*. at 3. Yet, the defendant's policies require that when an inmate transfers to another prison, he must begin his employment at Grade 4, regardless of his pay grade at the transferring prison. *Id*. at 3.

Therefore, the plaintiff will receive lower pay and will have to progress once again to Grade 1 before he will be eligible to enroll in the cable program. *Id.* at 3. Because of the relatively short time remaining in his sentence, the plaintiff asserts that he will be unable to satisfy the enrollment requirements. *Id.* at 4. He states that this transfer amounts to the deprivation "of a right [to training that] he earned through hard work over at least two years" that will equip him with a "reasonable chance to succeed" in society upon his release. Pl.'s Reply to the Def.'s Opp'n ("Pl.'s Reply") at 7. The defendant counters that receiving training while incarcerated is not a protected constitutional right, and thus the plaintiff's argument of irreparable harm is unavailing. Def.'s Opp'n at 8.

      The loss of specific job opportunities, training and competitive advantages can constitute irreparable harm. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 89 n.16 (1981) (discussing the loss of opportunities resulting from employment discrimination). To justify preliminary relief, however, the plaintiff must also demonstrate that the injury is certain, great, actual and not theoretical. *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

      Here, the plaintiff accuses the defendant of wrongfully depriving him of participation in the programs at Fairton. Pl.'s Mot. at 4-5. It is axiomatic that the plaintiff cannot continue training in the aquaculture program at Fairton while incarcerated at Leavenworth. What is certain, therefore, is his loss of access to the aquaculture program. In addition, he is certain to lose his pay grade, pursuant to the defendant's policies, and as a result, he will lose his eligibility for the cable program. *Id.* at 3. The plaintiff has thus established irreparable injury with regard to Fairton's aquaculture program and his eligibility for the cable programs.

12

Some of the other harms alleged by the plaintiff, in contrast, are not certain, great or actual. For example, although the plaintiff claims that the transfer will deprive him of participation in the cable program, *id*. at 3-4, the plaintiff was never enrolled in that program. For the court to recognize this injury, the plaintiff would have to complete the qualifications for enrollment, successfully enroll into the program, or otherwise demonstrate that this injury is certain or actual. *Wis. Gas Co.*, 758 F.2d at 674.

The plaintiff also claims that his "ability to adjust to his reentry into society and support himself will be seriously compromised" by being deprived of the programs at Fairton. Pl.'s Mot. at 9. The plaintiff asks the court to reach this conclusion by extrapolating a certain harm from the existence of generalized variables. For example, the plaintiff states that he lacks marketable skills. *Id*. at 2-4. In addition, the plaintiff asserts that he is 58 years old and will suffer "the normal difficulties for a late middle-aged man in getting a job as well as those imposed by his lengthy incarceration." *Id*. at 17. The plaintiff faces a difficult and sympathetic set of circumstances which may, indeed, make securing employment difficult. Regrettably, however, the loss of prospective job opportunities and success is too speculative to factor in the court's reasoning. *Wis. Gas Co.*, 758 F.2d at 674 (stating that "allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur") (emphasis in original).

The court concludes, therefore, that the plaintiff has made a clear showing of irreparable harm in his removal from Fairton and the resulting loss of his progress in Fairton's aquaculture

training program.[7] The plaintiff has not, however, made a clear showing of irreparable harm in the inability to participate in the cable training program or in the loss of future job opportunities.

### 5. Injury to Other Parties and Public Interest Considerations

The plaintiff argues that the defendant will suffer no "perceivable" harm should the court grant an injunction. Pl.'s Mot. at 9. The plaintiff states that "[o]ther than a decrease in the overall population of USP Leavenworth by one inmate, the BOP will remain completely unaffected in a negative manner by Mr. Tanner's immediate return to FBI Fairton." *Id*. at 9. The plaintiff goes on to assert that his completion of the vocational programs will, in fact, benefit the defendant and society as a whole, as the plaintiff will be a testament to the defendant's "commitment to rehabilitation over population management concerns." *Id*. at 9-10. The defendant does not allege that it will suffer a harm as a result of an injunction, and its opposition merely sets forth an extensive discussion of sovereign immunity and prisoners' liberty interests. *See* Def.'s Opp'n.

Indeed, the public has a strong interest in seeing that incarcerated individuals are capable of becoming contributing members of society upon their release. *See Cummings v. Regan*, 357 N.Y.S.2d 260, 263 (N.Y. App. Div. 1974) (stating that the "interest of society is rehabilitation" of prisoners). On the other hand, "courts must and do recognize the primacy of the legislative and executive authorities" in the administration of prisons. *Inmates of Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988) (quoting *Rhodes*, 452 U.S. at 362). When prisoners raise allegations of constitutional violations, however, a court ought to intervene appropriately.

---

[7] The plaintiff also alleges that any violation of constitutional rights amounts to irreparable injury. Pl.'s Mot. at 8. Because it is unlikely that the plaintiff can succeed on his constitutional claims, however, the court does not address this argument.

*Rhodes*, 452 U.S. at 332.  And yet, because the court is instructed to give significant deference to the executive, *Women Prisoners of the Dist. of Columbia Dept. of Corr.*, 93 F.3d at 931-32, it must proceed judiciously.

Therefore, in light of the plaintiff's failure to demonstrate a likelihood of success on the merits, the court declines to grant the extraordinary relief of an injunction.  *Mazurek*, 520 U.S. at 972; *Am. Bankers Ass'n*, 38 F. Supp. 2d at 140.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a preliminary injunction.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of May, 2006.

RICARDO M. URBINA
United States District Judge